is now in session. Good morning, aloha, and welcome to the Ninth Circuit. I and my colleagues, Judge Clifton and Judge Desai, are delighted to be here in Las Vegas. Today, we have four cases on the oral argument calendar. We will take the cases in the order they appear on the calendar. The first case we're going to hear is Dominguez v. City of Scottsdale. And I think for all four cases, all counsel are present. So, counsel for the appellant, whenever you are ready, you may begin. There are 15 minutes aside. Thank you, Your Honor. My name is Lori Davis. May it please the Court, I represent Officers Kohler and McKelley in the City of Scottsdale in this matter. I'd also like to reserve five minutes of my time for rebuttal. Mr. Dominguez reached. Plaintiff admits he reached, and it's on the video. Plaintiff's sudden reach into the dark, cluttered interior of his car, away from the officer, is what sets this case apart from all others cited by the plaintiff in the court below. No force was used before the reach. The reach precipitated the force. And it was in that tense moment after the seventh command and warning to get out of the car under the totality of the circumstances known to the officer at the time that the reach occurred. The Ninth Circuit case from 2009, Ramirez v. City of Buena Park, instructs officers that sudden movements or attempts to reach for an object not immediately identifiable supports the reasonable belief of an officer that the suspect is armed and dangerous. So counsel, the district court said, I think it's ER 15, but page 13 of the district court's order, defendants claim Kohler believed Dominguez posed a threat to officer safety. Defendants, however, fail to point to objective facts in the record that substantiate Kohler's beliefs or concern. Is it your view that the video, what you've just described as the reach, that's what you rely on for us to determine that the district court just simply, as a matter of law, got this wrong? Your Honor, I believe it's the totality of the circumstances. I think you start with the fact that traffic stops are inherently dangerous. We know that 2,000 officers are assaulted and 10 officers are killed each year feloniously with weapons in traffic-related pursuits. In Michigan v. Long, United States Supreme Court opinion affirms that fact, that they're inherently dangerous. And the reason for that is because a weapon can be hidden in a car in the tight compartments under the seat, in between the seats at any point. In this particular circumstance, the tensions had risen, and it's very clear from the video, to the point where Mr. Dominguez said, you'd better watch, you'd better lose your attitude. Well, I watched the video, and I've got to say, it's not hard for me to understand how a jury concluded that it was your client who was the instigator, your client who upped the ante, your client who injected that pressure, it was your client that asked the person who had stopped for license and registration, inherently expecting him to be reaching for things. So I'm not so sure of the simple fact that at some point, he reached for something else, oh, that trumps everything else. You're allowed to apply what seemed to be pretty dramatic force up to and including a body slam, well after there was any risk of somebody reaching into the next seat. So it seems to me, basically, that your characterization depends upon your acceptance of, or the jury's acceptance of your view of the facts, and if the jury could reasonably conclude to the contrary, how is this a summary judgment? The jury could not reasonably conclude to the contrary. Again, we have a tense situation. I think that... Why not? The primary problem here, Your Honor, is we have admitted facts that establish reasonableness when viewed from the officer's perspective. Well, let's go through the facts. Which facts do you tell us are enough and undisputed to establish reasonableness? The reach itself, and it was a fast... So we've got the reach. Okay. What else is there? All right. The fact that he said he's an armed guard, but he doesn't have his gun with him. What reasonable officer is going to believe he doesn't have his gun until he's been... The client that pursued the security guard angle and kept insisting, how can you be hostile to the police if you're a security guard? There was no suggestion that he was armed, and there was nothing said by the individual that suggested he was looking to impose any risk or danger or threatening the officer in any way. At the point that force was applied, which is the point the court must look at, that's the point where the threat occurred. I will agree with the court... I'll stop you there. At the time of the body slam, exactly what threat was being posed? The same threat that was posed before. The threat was not contained until Mr. Dominguez had been out of the car and handcuffed, searched. He had not been searched. The vehicle had not been searched. MIMS allows this officer... You're answering broadly. At the time of the body slam, what was the threat? The threat was he was still struggling with the officer. The officer was in the act... It's a fluent act of the officer getting him out of the vehicle and onto the ground so they can get him in handcuffs. At no point did Mr. Dominguez give the officer any indicia of compliance. He ignored every single comment or every single command by the officer. The officer had absolutely every right to order him out of the car and for him to be out of the car. But counsel, when you say noncompliant, ignored every command, isn't that looking at the facts in the light most favorable to your client? I mean, we've all watched the video and it struck me that while nobody in this video is behaving entirely sensibly, in the light most favorable to the driver, it appears that he was trying to comply with giving them identification. He was trying to comply with ratcheting things down. Why should we look at it in the light most favorable to your client in terms of whether he was complying or not complying? Why shouldn't we just look at the video and look at it in the light most favorable to the driver? The Supreme Court requires us to look at... The court to look at the facts, the admitted facts from a reasonable officer's perspective. Right, but that's not the same as in the light most favorable to your client. Your Honor, we have at the point that he has ordered out, he orders Mr. Dominguez out of the vehicle seven times. On the seventh time and the warning, get out or I'm going to rip you out of the car. Isn't he also standing in front of the door not allowing the driver to get out of the car while he's ordering him out of the car? Judge Desai, I believe that that... It is a... I think it's a red herring for the point of the use of force. There was no force use. He's ordering him out of the car. Plaintiff is leaning back much like you or I might do if we drop our cell phone in our car, but what is he leaning back for? Is he leaning back from a reasonable officer's perspective to gain access to something, to gain a weapon? And then when he reaches suddenly back, is the officer not reasonable in perceiving that to be an imminent threat? And that's the point that force is used, regardless of whether he could get out of the car or not. At that point, you know, Mr. Dominguez was a passive resistor until the point that he chose to make that sudden unexpected reach, which was different from every other fidget or looking for papers. The tensions had risen at that point and he unexpectedly reached into the dark interior compartment of that car. Well, it wasn't all that dark because the other officer was the other side shining his direction. There's no evidence, Judge Clifton, that Officer Kohler saw anything that the flashlight was shined upon. And even if it did... I'm not saying what he saw, I'm saying it wasn't all that dark. You're trying to emphasize it's dark and I'm saying, gee, a flashlight is going through with the officer on the other side, so again, it seems to me that your argument depends on a certain characterization of the facts and that's not what we're supposed to be doing here. If the facts are disputed, if there's a genuine issue of material fact, which there appears to be, then summary judgment doesn't appear appropriate. Now, if you want to settle on the uncontested facts, that's fine, but you're not doing that. You're insisting, for example, sudden reach into a dark part of the car and that is not uncontested. So tell me, based on uncontested facts, I accept the law that says we look from the uncontested facts, we look from the non-movement's perspective, in this case, that's the plaintiff. So you've got to get us to facts that are not contested, that establish a basis for qualified immunity and all of your arguments so far seem to me to wander into the territory that requires us to accept facts that are not uncontested. Mr. Dominguez reached into the car, we do not know, from the officer's perspective, where was he reaching? Was he reaching under the seat, between the seats? If it was daylight, I mean, it makes it worse that it was dark and that the flashlight might intermittently be showing things, but the court has clearly recognized that weapons can be hidden anywhere, and this car was clearly cluttered. In addition, we have admitted facts, we have the reach, we have the active resistance that Matos defines, the clutching of the wheel, the bracing inside the car, and you see the ignored commands on the video. You see the continued resistance as he gets out of the car, and I will respectfully disagree with the district court that the video doesn't contradict Mr. Dominguez's story. It clearly does, and I'll refer the court to Officer McKellie's on-body camera video. We watched the video. You can take that as a given. I've got to say the impression I came out of it, and we haven't conversed among ourselves, but the impression I came out didn't really corroborate the officer's description. And so a jury, looking at that, might reach the same kind of conclusion I reached, which is the officer was the one that was instigating this problem. He didn't really seem threatened. The officer did not ask Mr. Dominguez to reach. The officer reacted to the reach. The officer asked for his license and registration. He was expressing his suspicion with the story that's being given by Mr. Dominguez, and I don't know whether an objective officer would have reacted to that reach. Would an officer sit back and wait? Mullenix v. Luna tells them that he doesn't have to do that. So counsel, what the district court found at ER 16 is a reasonable jury could conclude that when taking the totality of the circumstances into account, Kohler unnecessarily created his own sense of urgency, and the potential threat of a weapon without more did not create an immediate danger that justified the use of substantial force. Do you think the district court's determination there was wrong as a matter of law? I do, Your Honor. I do not believe there was substantial force issued. It was hands-on only force. No weapon was used. He had an absolute right to get him out of the car. You see him pulling. You see him pushing. You see in response to the active resistance, which he knows he can't use his taser because Matt has told us he can't use his taser, so in the face of active resistance. And so he's doing everything he can to get the man out of the car and onto the ground and into handcuffs so that he can safely search him, search the vehicle, and conduct his investigation. Every step of the way, Mr. Dominguez fought him. And every step of the way, the force was proportional to the threat posed by Mr. Dominguez. Reasonableness all the way. And not only that, Your Honor, clearly established. Where's the case? Where's the case that shows him what he should be doing? Where's it on squarely on all fours, Governor, in these facts? This was not a passive resistance situation. He reached. He reached into the interior of his vehicle away from the officer unexpectedly and suddenly. And Ramirez v. City of Buena Park tells us that that allows him to have a reasonable belief that the suspect is armed and dangerous. Did you want to reserve the rest of your time? I would like that, Your Honor. Thank you. Thank you. Thank you. Good morning. And it may have pleased the court, Jesse Showalter on behalf of Plaintiff Appellee Andres Dominguez. I think I've known Ms. Davis for a long time. I really respect her. And I feel like she's given me insight into what her jury arguments and her closing arguments in this case will be. Let's look at the reach. Yeah. That's what she started with. That's the piece that does seem to be uncontested. Why couldn't the officer have reasonably perceived the situation at the time that your client reached to the other side of the car where Officer Kohler, I guess, could not see and then resisted removing himself or didn't get out of the vehicle himself but braced himself in such a way as to make it difficult to extract him from the vehicle? Why isn't that a sufficient basis for the officer to respond with the force that he used? Well, I think, I know this court is very familiar with the video and what it shows before the reach that Ms. Davis is focused on. And when I say video, I should say multiple videos, is that because both Kohler and McKellie show not just one reach, but multiple reaches throughout the time that Andy and Officer Kohler had this conversation. You can see Andy reaching all over the interior of the vehicle. You can see him reaching into the glove box. There's a point on McKellie's video where you see that, in fact, Andy's reaching into his back pocket. This is all before the reach. But Officer Kohler can't see from the perspective of Officer McKellie. That's why I'm focused on Officer Kohler because he's the one that applied the force. And you're right. I mean, your client does reach, license registration and so forth. But as I'm trying to watch this, and because of the emphasis, I watched it several times, I'm trying to ask myself, well, what could Kohler have perceived? And he's not quite at the same place as the camera, so you got to project a little bit. What could Officer Kohler have perceived when your client reached, which in your brief, you describe as reaching, I think, for his phone, intending to record. But Kohler, of course, doesn't know what he's reaching for and doesn't know the intent is to record. So why couldn't the officer have been sufficiently concerned at that point to have applied the force to try to extract your client from the car, to which your client offered resistance? And my answer is to why a reasonable officer would not have perceived this reach as posing a threat is that there had already been multiple reaches. And a reasonable officer in a traffic stop situation knows reasonably that every single traffic stop situation is going to require him to ask the occupant of the car to reach for something. Okay, so let's take that. What case is there that is not at a high level of generality, which puts the officer on notice that if there have been previous reaches, that basically he has to disregard any potential danger from a similar kind of reach? What is there that says initial reaches are different than a case with like one reach and the reaction is based on that one reach, other than at a high level of generality? If qualified immunity requires that level of granularity and particularity, I think the court knows I don't have a case that says what you're saying. But your argument is this isn't the one reach case where you're saying, or it sounds like you're saying, oh, just one sudden reach. That's a different circumstance. And in that case, the officer can pull him out of the car, but with multiple reaches cannot. And isn't that the kind of situation where this Supreme Court has repeatedly told our court, you need something not at that, you need something more on point than you can't use unreasonable, unnecessary force? No, because that's not what my argument is with respect to the reaches. My argument with respect to the reaches is that the jury can look at this video and say, Officer Kohler watched Andy reach multiple times and didn't perceive any danger from it. And a reasonable officer in this context would not have perceived any danger from it. And had Officer Kohler perceived a danger, had he actually been concerned that there was a weapon in the car, or had a reasonable officer been concerned that there was a weapon in the car, one of the instructions he would have given to the car occupant is, you know what, because we talked about a gun, I need you to keep your hands where I can see them. I need you to not make any sudden reaches, and I'm going to ask you to get out of the car, or anything along those lines. And is there any case from the Supreme Court, or our court, other than a high level of generality where that kind of detailed instruction is given to put the officer on notice that not saying those types of things is going to subject the officer to liability? I don't think that's what qualified immunity requires, is that level of particularity. And the Supreme Court has repeatedly said that. And I think the cases I would point to are Hope v. Pelser, Taylor v. Riojas. And also, you know, there's a Brousseau v. Haugen, in which the Supreme Court was not kind to the Ninth Circuit, but the Supreme Court noted that there are many cases in which Graham v. Connor put officers on notice of what the law is. And I understand that there are a set of cases in which there's more going on than what's going on here. The context of this case that puts it outside of all the cases that the city relies on starts at the beginning. And that is, Andy brought his car to a stop. He placed his car in park. He rolled down the window. He is submitting to police authority. And all the cases they cite are cases where that thing, that did not happen. And so, you know, I think we have to look at it in that context. And in that context, there is a robust set of cases that put the officers on notice that using significant force against somebody who is complying violates the United States Constitution. Would it have made a difference, in your view, to the qualified immunity analysis if instead of your client saying, but I don't have a gun with me even though I own one, the client, your client had said nothing about the gun? Would that have made a difference to the qualified immunity analysis if he just hadn't said anything about whether he was carrying his weapon with him? Well, so when you say the qualified immunity analysis, do you mean does that change the analysis with respect to the first prong, which is whether there's a constitutional violation? Either prong. Because I think on the first, I'm not certain how it shakes out. If he had been difficult, I think that, I think if that were the case, then it becomes murkier. But here, you have no objective basis for Officer Kohler to believe that there is any weapon in the car. You have no objective basis for Officer Kohler to believe that Andy poses any kind of a threat. Other than these weird statements Officer Kohler, Officer Kohler imagines, it seems, that Andy is somehow anti-government or anti-cop. And that is, there's no basis for that. And throughout the pleadings, that's the argument they make, is that he was anti-government. It seems to be made up. And the same with the gun. Officers can't imagine a gun where there is not one. Well, officers can reasonably be afraid of the uncertainties of traffic stops. And here, added to this, is the fact that your client admitted he owns a gun. So this is different than just some random motorist who has said nothing about owning a gun or not owning a gun. Isn't that a difference that's relevant? I don't believe it is, because there's, I think, 300, there's more than 300, there's like, something like 800 million guns in private hands in the United States of America. And in Arizona, which is a open carry, concealed carry, however you want to carry state, that argument means that they can use force, almost up to deadly force, in any traffic stop if anybody makes any sudden movement. And if that's the law, I mean. Didn't the district court consider this exact fact when it conducted its analysis and cited to Young and Rice in saying that even if the officer believed that the statement that your client had a gun raised some concern about the officer's safety, they still had a responsibility to use alternative, less intrusive means to accomplish their goal as opposed to moving directly to the excessive force that was used in this case. That's correct. And I think the district court did a really good job of doing that analysis. The district court is very explicit about what it's doing. It did the Scott v. Harris analysis. It looked at the video. It compared the video to the statements that Andy made. And it said, Andy's statements about what happened do not clearly contradict this video. And it said a reasonable jury can look at this in the light most favorable to Andy and find that this was a constitutional violation. And so I think we're, I'm very lucky in this case to have the district court's briefing, you know, on that topic. And it really went through the law and it went through the facts. And there is something else that I wanted to point out because I don't think it's been captured in the briefing. I don't think, I wish the district court would have gone a little bit farther with this because I think the really, there's a really important point which is the point at which Officer Kohler instructs Andy to get out of the car and then steps into the doorframe. Because at that point, I want to know what exactly Andy could have done that Officer Kohler would not have claimed justified force. If Andy had moved toward him in compliance with his reported command, and I don't think it's a command at all. But if Andy had moved toward him, Andy would be accused of reaching, lunging, right? If Andy moves away from him, which is what happened, and by the way, Andy has his hands in the air in response to that. Again, clearly submitting to authority. I don't think there is, I think a reasonable jury could find there is no passive resistance here. Andy is faced with an angry officer who is, who uses obscenities against him, who repeatedly makes false accusations that he's anti-police. And Andy is in an impossible situation where there's no direction he can move without potentially being accused of a crime. That, that is the, and what a reasonable jury can say is Officer Kohler had seven years of experience, seven years of doing traffic stops. What he's doing when he steps into that doorframe is creating a situation where he can charge the person with resisting arrest no matter what happens. And you can see in that video, and a reasonable jury will see in that video, that Andy knows he's in an impossible situation, and he doesn't know what to do. Because he's faced with an angry, aggressive officer. And Andy describes him. One of the problems with body camera video, I think, is it doesn't show what the officer looks like. It doesn't show how they are, how they are behaving. And I think a reasonable jury can say, this was, the video, I think, allows us to say, you know what, these guys were on notice. This isn't even a qualified immunity situation. We can look at this video and say, you know what, maybe a reasonable jury can say Officer Kohler should not be a police officer. He should not be entitled to qualified immunity. This is the kind of malicious or incompetent action that, where I think that might apply. I don't think this court needs to find that. I think this court can rely on what the district court can do. The Supreme Court lets us reach out and say, well, this guy's acting so bad that we're dismissing this whole area of the law. So I'm hearing your jury argument now. You're both practicing for what might have come, but I'm not sure that helps us. I don't think it helps you because I, but I think that the district court's analysis is accurate. The district court's analysis is correct. It identified a robust set of cases which stand for the proposition that failure to immediately and completely apply, immediately and completely comply with a purported police command does not justify significant force. I want to, and the significance of the force here is body slammed onto concrete. Andy is very lucky, Officer Kohler is very lucky that his injuries are only what they are. That could have been deadly force. That could have been a spinal injury. It was a significant degree of force that's shown in that video. I'm getting a little off the track there, but the authority really is robust, and I think what this court can rely on is that it has a history in cases in all different contexts. There's Coles v. Eagle, and there is Rice v. Morehouse, which was a 2011 occurrence, that both apply to this situation. But outside of that context, the Ninth Circuit has repeatedly asserted this principle, that you cannot use significant force against people who are most passively resisting. I'm almost out of time, and what I will submit to the court is that looking at this from the perspective of how a reasonable jury could, they could find that Andy was not resisting at all. Kohler violently and aggressively placed him in an impossible situation, and he did what any citizen would. He put his hands in the air and tried to avoid being hurt. Thank you. Your Honors, there were a lot of questions about the other times that Mr. Dominguez was reaching around in the car. Reaching and fiddling and looking for things is a whole scale different from this. Whole scale difference. Where's the case? Where's the case that says that Officer Kohler cannot step in that doorframe? Where's the case that says... Well, if he steps in the doorframe, how is not getting out of the car resisting? It's passive. It's a physical question, not a legal question. It's passive resistance. Mr. Dominguez... Stop, stop, stop. If you cannot open the door to exit, how is not getting out passive resistance? It's not physically possible to exit if the officer is standing in front of the door. That's the argument being made. I don't know if that's true or not. The video doesn't necessarily contradict that, and so I put it to you. He's arguing the jury could say there's no resistance at all because the problem is that your client decided to stand in front of the door. Where's the case that says where the officer can stand? No, no, no, no, no. It's not a case. It's a fact. Well, your... If your premise is that Dominguez is resisting, the resisting is because he's not getting out of the car. But if he physically can't get out of the car because your client's standing there, where's the resistance? I think... If there's no resistance, there are lots of cases saying that application of this force is not eligible for qualified immunity. The video clearly shows, Your Honor, that Officer Kohler, he's... When they're having the conversation, Mr. Dominguez says, you better lose your attitude. Officer Kohler opens the door and says, I need you to step out of the car. And why does he say that? I mean, if you want to go to the attitude, it's because your client has been dumping on him from the get-go. So to say all of this is built upon Mr. Dominguez responding in some fashion to the flame that your client has lit, that's not very persuasive. And it, again, requires us to accept your version of the facts. So if you tell me that the jury has to reach a certain conclusion, because at some point Dominguez says, you're the one that's showing attitude, okay, that case has to go to trial. What this Court must look at is the moment immediately prior to the use of force. Graham says reasonableness at the moment. At the moment the force was used, would an objective officer have responded with force? And at the moment force was used, the immediate moment preceding that was the reach. After that, it was active resistance. Look at the District Court on that, trying to detail the facts, recognizing what both sides say. According to the District Court's decision at ER 8, Dominguez puts his hands in the air, holding his license and insurance in hand, and told Kohler, do not touch me. Kohler then moved closer and told Dominguez, get out of the car or I'm going to rip you out of the car. At the same time, Dominguez repeated, do not touch me, and reached for the phone on the passenger seat. Now if you take that, and your client is saying, or I'm going to rip you out of the car, that seems to precede, or at least at the same time, that the reach that you're so much depending upon occurs. But Dominguez's reach comes after it appears, or could come after according to what the jury might find, after your client says, or I'm going to rip you out of the car. Now who exactly has initiated that problem? Who has injected force into this? The officer has a right and a duty to exercise unquestioned command of the situation. Because before he says that, that's before the reach. If you're depending upon the reach to justify the use of force, your client says, or I'm going to rip you out of the car, before that reach takes place. So... But there's no force used. Ultimately there's no force used until the reach happens. All right. Thank you, Counselor. The case just argued will be submitted.
judges: CLIFTON, BENNETT, DESAI